

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00134-CV

**IN THE INTEREST OF D.R.**, A.D.R., K.R., A.K.R., and L.R.

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA00445
Honorable Genie Wright, Judge Presiding

Opinion by:      Liza A. Rodriguez, Justice

Sitting:          Luz Elena D. Chapa, Justice
                  Irene Rios, Justice
                  Liza A. Rodriguez, Justice

Delivered and Filed: August 14, 2019

AFFIRMED

Appellant Mother Naomi H. and Appellant Father Kenneth R. appeal the trial court's order terminating their parental rights to eight-year-old D.R., seven-year-old A.D.R., six-year-old K.R., two-year-old A.K.R., and one-year-old L.R.[1] On December 2, 2017, L.R. was born premature and was hospitalized in the neonatal intensive care unit for three to four months. When hospital staff became concerned Naomi H. and Kenneth R. were not visiting L.R. regularly, had not learned how to take care of L.R.'s medical needs, and could not be located to obtain consent for necessary vaccinations, they reported the parents to the Department of Family and Protective Services on March 2, 2018. The Department subsequently sought the removal of the five children who are the subject of this suit and the termination of parental rights. After a bench trial, the trial court

---

[1] Naomi H. has three older children who are not the subject of this suit.

terminated both Naomi H.'s and Kenneth R.'s parental rights based on subsections (D), (E), (O), and (P) of section 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1). The trial court also found that termination of their parental rights was in the best interest of their children. *See id.* § 161.001(b)(2). On appeal, both Naomi H. and Kenneth R. argue that the evidence is legally and factually insufficient to show that termination of their parental rights is in their children's best interest. We affirm.

In reviewing the legal sufficiency of the evidence to support the trial court's best-interest finding, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, a court should consider the factors set out in section 263.307 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.307(b).[2] In addition to these statutory factors, in considering the best interest of the

---

[2] These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the

child, a court may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[3] The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Additionally, in determining whether termination of the parent-child relationship is in the best interest of a child, a court may judge a parent's future conduct by his past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

In support of his argument that the evidence is insufficient to support the trial court's best-interest finding, Kenneth R. emphasizes that the caseworker testified the children are bonded to both their parents and wish to return to their care. He also points *to his own testimony* that (1) his children have always been safe around him and Naomi H.; (2) he does not have anger issues; (3) there has never been any domestic violence between him and Naomi H.; (4) he has never been *convicted* of a crime involving domestic violence; (5) none of his drug tests had positive results; (6) he completed a parenting class; (7) he and Naomi H. completed a class about how to meet the needs of a child born premature; and (8) he has only seven more classes to complete his domestic

---

child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE ANN. § 263.307(b).

[3] These factors include, but are not limited to, the following: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013) (citing *Holley*, 544 S.W.2d at 371-72).

violence program. Kenneth R. further points to evidence that (1) L.R. no longer needs twenty-four-hour medical care; and (2) he and Naomi H. had appropriate visits with their children. He stresses Naomi H.'s testimony that she had never seen him use drugs, that he has never become angry with her; that he has never hit or touched her inappropriately; and that they attended counseling sessions together.

Similarly, in support of her argument that the evidence is insufficient to support the trial court's best-interest finding, Naomi H. emphasizes both she and Kenneth R. testified that there has never been anger issues or violence between them. Naomi H. further points to her own testimony that she completed a parenting class, attended counseling sessions, completed a drug assessment, completed domestic violence classes, and has a home residence. She likewise stresses the caseworker's testimony that she has a bond with her children and that they have expressed their desire to return to their parents' care.

In making these arguments, however, both Naomi H. and Kenneth R. omit evidence in the record supporting the trial court's finding. There is evidence in the record to support the conclusion that Naomi H. and Kenneth R. have an ongoing relationship involving domestic violence and thus cannot provide their children with a safe and stable home environment. Officer Carla Carrillo of the San Antonio Police Department testified that on January 16, 2019, just a month before trial, she received a call for a disturbance with a gun. When she arrived at a home, there were many people outside, and she was flagged down by Naomi H., who had a "visible bloody lip." Officer Carrillo testified that Naomi H. reported she and Kenneth R. had gotten into an argument, and Kenneth R. had followed her into a bathroom where they had a physical altercation. Naomi H. told Officer Carrillo that she was choked and strangled by Kenneth R. until she pushed him away and fell to the ground. Kenneth R. then struck her in the face, causing the bloody lip. Officer Carrillo testified that other witnesses heard what was happening and separated Naomi H. and Kenneth R.

According to Officer Carrillo, the witnesses told her Kenneth R. pointed a gun at four people, including Naomi H. These witnesses saw Kenneth R. discharge the gun. Officer Carrillo determined that Kenneth R. had left the scene, but she found shell casings and saw some blood in the bathroom. She called CSI to process the scene. Officer Carrillo testified that based on her investigation, she concluded Naomi H. was the victim of domestic violence.

While Kenneth R. argues in his brief that he has never been *convicted* of a crime involving domestic violence, he omits the fact that at the time of trial, he was incarcerated pending charges over this January 16, 2019 incident. The caseworker testified that neither Kenneth R. nor Naomi H. had met the goals of the family service plan, as they were still involved in domestic violence and adamantly refused to acknowledge or address the violence. The caseworker expressed great concern with both parents continuing to make excuses and minimizing their actions. Indeed, during her testimony, Naomi H. gave an incredulous story about how she hurt her lip: she went into the restroom, crying and upset, when Kenneth R. followed her inside to calm her down, but she kept pushing him away. According to Naomi H., her hand then swung back toward her body, causing her to *hit herself*. The caseworker emphasized that Naomi H. refuses to see a problem in her relationship with Kenneth R.

Naomi H. and Kenneth R. also omit evidence of their illegal drug use during the pendency of this case. In her testimony, Naomi H. admitted to prior illegal drug use. According to Naomi H., at the time of A.K.R.'s birth on November 9, 2016, she and the baby tested positive for marijuana, which resulted in the Department becoming involved with the family at that time.[4] During the pendency of the instant case, Naomi H. admitted that in December 2018, two months before trial, her hair follicle test was positive for methamphetamine. There was evidence that the

---

[4] The Department did not file the instant suit seeking termination until after L.R.'s birth on December 2, 2017.

results of a hair follicle test dates back ninety days. Naomi H. explained her positive results by claiming her drink had been spiked while she was out of town. Similarly, there was evidence in December 2018 that Kenneth R.'s hair follicle test was positive for illegal drugs. The caseworker testified both Kenneth R. and Naomi H. had refused to take the drug test in December 2018 unless it was court ordered. Thus, at the second permanency hearing in December 2018, the court ordered them to take drug tests that day. Naomi H. took her test, but Kenneth R. refused again and did not undergo the test until the following Monday.

There was also evidence that Kenneth R. and Naomi H. cannot meet the needs of their children. There was evidence that Naomi H.'s three older children, who are not part of this case, were living with Kenneth R. and Naomi H. but had not been attending school for over six months. The caseworker testified he spoke with these children, who stated they had been instructed by their parents to lie to him. Further, the caseworker testified Kenneth R. and Naomi H. cannot meet L.R.'s specialized medical needs. While L.R. no longer needs twenty-four-hour medical care, the caseworker testified Early Childhood Intervention goes to L.R.'s current placement three times a week. Further, L.R. sees three specialists per month. Additionally, with regard to providing a safe and stable home, there was evidence Kenneth R. was incarcerated at the time of trial and Naomi H. had been unemployed for the past two to three years.

Finally, the caseworker testified the children were "doing very well" in their current placements. The caseworker was "impressed" by how well L.R. was doing developmentally. The long-term plans for the four older children were placement with their paternal great-grandmother. However, because the great-grandmother could not meet L.R.'s medical needs, the Department was looking at other permanent placements for L.R., including an aunt.

In looking at all the evidence in the light most favorable to the trial court's best-interest finding, we conclude the evidence is legally sufficient. *See In re J.O.A.*, 283 S.W.3d at 344.

Further, even in considering the disputed evidence in this case, such as whether Kenneth R. and Naomi H. have engaged in domestic violence, we conclude that the evidence is factually sufficient to support the trial court's best-interest finding. *See id.* at 345. We therefore affirm the trial court's order terminating Naomi H.'s and Kenneth R.'s parental rights.

Liza A. Rodriguez, Justice